**UNITED STATES ex rel. Angelo John LA MARCA, Petitioner,**

v.

**Wilfred L. DENNO, Warden of Sing Sing Prison, Respondent.**

United States Court of Appeals Second Circuit.

Argued June 27, 1958.

Decided July 2, 1958.

David M. Markowitz, New York City, for petitioner.

Henry P. DeVine, Asst. Dist. Atty. of County of Nassau, N. Y., Mineola, N. Y., for respondent.

Before MOORE, Circuit Judge.

MOORE, Circuit Judge.

The petitioner, Angelo John LaMarca, moves before me during a recess of this court for a certificate of probable cause pursuant to 28 U.S.C. section 2253. That section, in part, provides: "An appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a State court, unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause. June 25, 1948, c. 646, 62 Stat. 967, amended May 24, 1949, c. 139, § 113, 63 Stat. 105." The sole issue, therefore, is whether there exists "probable cause" for the appeal.

The proposed appeal is from an order made by Judge David N. Edelstein filed on June 13, 1958 which order denied petitioner's application for a writ of habeas corpus. Petitioner's application was based upon the ground that he could not have received a fair trial in Nassau County because of prejudice existing there at the time of the trial which prejudice was allegedly created in large part by newspaper and radio publicity given to the crime. Petitioner argued before Judge Edelstein, as he argues now, that this publicity and alleged prejudice, particularly in the selection of the jury, "must of necessity preclude that kind of fair trial which is guaranteed by the Fourteenth Amendment of the Federal Constitution." Since protection of petitioner's constitutional rights is of paramount importance, a thorough review of the proceedings so far as they bear upon the prejudice complained of has been made.

Petitioner was indicted on August 29, 1956 for the crimes of murder in the first degree and kidnapping. On September 5, 1956 he pleaded not guilty with the specification of insanity in the County Court of Nassau County. On September 21, 1956 he made a motion in the Supreme Court, Appellate Division, Second Judicial Department, for a change of venue. In support of that motion petitioner submitted lengthy affidavits reciting the news coverage which the crime had had in the local press and statements as to the feelings of the local populace. This motion was denied on October 1, 1956.

The trial commenced on November 5, 1956. The first six days were devoted exclusively to the examination and selection

of jurors. Accepting the figures given by the petitioner in his present application, 230 jurors were examined, 44 were excused because they could not devote the time necessary to try the case, 6 were excused for illness, 13 were excused because of their own ideas on insanity, 20 were excused because they were acquainted with one or more persons involved, and 15 were excused for various other reasons. A balance of 132 jurors remained. The *voir dire* of the prospective jurors commenced on November 5, 1956 and was concluded at the end of the sixth court day, on November 14, 1956. The examination is set forth verbatim from pages 50 to 685 of the printed record on appeal in the State Court. Examination of jurors for the selection of alternates continues to page 740. I have reviewed the *voir dire* and find that petitioner's trial counsel, who is now his counsel on this application, carefully examined every juror. Furthermore, the trial court was most protective in excusing jurors for cause. Turning to the record with respect to the jurors finally chosen, I find that in every case except the twelfth petitioner's counsel after thorough examination said that the juror was satisfactory or acceptable to the defendant (petitioner here). This satisfaction appears on pages 94, 156, 190, 229, 239, 324, 397, 430, 467, 527, 560, and on 684–5 where after having exhausted his peremptory challenges petitioner acknowledged as to the twelfth juror that he had no challenge for cause.

After conviction petitioner appealed to the New York Court of Appeals. In the notice of appeal in addition to the appeal from the judgment of conviction petitioner stated that he intended "to bring up for review before the Court of Appeals of the State of New York the intermediate order made by the Appellate Division, Second Department, denying the defendant's motion for a change of venue * * *". The record on appeal contained the motion for a change of venue and the supporting affidavits as well as the entire transcript of the *voir dire* in the selection of the jurors. This point,

however, was expressly waived by petitioner's appellate counsel. The conviction was affirmed (People v. LaMarca, 3 N.Y.2d 452, 165 N.Y.S.2d 753, 144 N.E. 2d 420) and the application for a writ of certiorari was denied (355 U.S. 920, 78 S.Ct. 351, 2 L.Ed.2d 279). The record before the Supreme Court, therefore contained all the facts theretofore presented concerning the alleged prejudice and the method of the jury selection.

Subsequently an application was made to the United States District Court for the Southern District of New York for a writ of habeas corpus based upon the fact that alleged prejudice in Nassau County had deprived him of the right of a fair trial. The court stayed petitioner's execution so that *coram nobis* proceedings could be instituted in the state court and hearings held on the prejudice question. Pursuant to that order hearings were held in the County Court of Nassau County before the Honorable Cyril J. Brown. After hearing some 35 of the rejected prospective jurors and after counsel had stipulated that the balance of the witnesses subpoenaed would testify in a similar vein the petitioner rested. Judge Brown concluded that nothing had occurred during the examination "which might have impaired the defendant's right to a full and fair disclosure of the facts on the voir dire (People v. Winship, 309 N.Y. 311 [130 N.E.2d 634])."

Thereafter petitioner sought to appeal to the New York Court of Appeals. 4 N.Y.2d 925, 175 N.Y.S.2d 167, 151 N.E.2d 353, 356. Chief Judge Conway wrote a detailed opinion particularly with reference to the examination of the twelve jurors who actually served and said in part:

"Thus, it is clear that the attorney for the defendant never said that any one of the 12 jurors was prejudiced against defendant.

"I can find no support in the evidence presented to me for defendant's charge that he was unable to, and did not, receive a fair trial in Nassau County. His guilt was proved beyond doubt and the trial

was free from legal error. He, himself, was satisfied that none of the jurors was prejudiced against him and he never claimed on the trial that any one of them was prejudiced against him. Accordingly, there is no justification for a further appeal to our court and I find myself unable, in good conscience, to certify that there is. The defendant has had his day in court and has received the full protection of the law."

On June 2, 1958 petitioner made application before Judge Edelstein for a writ of habeas corpus alleging in substance the same grounds as presented in the *coram nobis* proceeding before Judge Brown and in the application for leave to appeal before Chief Judge Conway. Judge Edelstein came to the conclusion that "Counsel for the petitioner proposes to produce precisely the same evidence at such a hearing as was produced before Judge Brown in Nassau County, but with the hope, of course, of achieving a different evaluation of that evidence." After examining the transcript on the *coram nobis* proceedings he decided that there was no need to hold another hearing on this issue, Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, and concluded "that there is no support in the evidence for the petitioner's charge that he was unable to, and did not, receive a fair trial in Nassau County."

A review of the many decisions of the Supreme Court indicates that the petitioner's constitutional rights have been fully protected. Giving little weight to possible technical arguments, such as, failure to exhaust state remedies, I find on the merits that the proof establishes that petitioner's rights have been zealously safeguarded both during trial and upon appeal. Recognizing also the doctrine of freedom of the press, it is to be expected that crimes will receive publicity in the local press. Certain crimes of violence are bound to receive greater publicity than petty larceny. The degree of publicity will require an equal degree of care in making sure that the jurors are carefully sifted so that both sides are

satisfied that they have twelve fair, impartial and unprejudiced persons to hear the proof. In this case that standard has been met. An unusually large group of veniremen was called. Jurors were readily excused for cause. The very duration of the examination shows the care with which the trial judge proceeded. Finally the acceptance by petitioner's trial counsel of eleven jurors as satisfactory after thorough examination and, after exhaustion of his peremptory challenges, his inability to find any ground for challenging the twelfth juror for cause, indicate that petitioner was accorded every constitutional right to eliminate from the jury persons who might be prejudiced against him.

After a protracted review of all the previous proceedings, I can find no probable cause for appeal. Therefore, under the law the certificate applied for must be denied.